IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY SORRELL,

        Plaintiff,

  v.

GARY SWARTHOUT,

        Defendant.

No. C 09-05888 SI

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

Anthony Sorrell ("Sorrell"), an inmate at the California State Prison Solano, filed this petition for a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Sorrell challenges his 2006 convictions in the Santa Clara County Superior Court for assault with a deadly weapon under California Penal Code § 245(a)(1) and witness intimidation under California Penal Code § 136.1. A hearing was held on February 11, 2011, and thereafter the parties filed supplemental briefing. For the reasons discussed below, the Court DENIES Sorrell's petition for habeas corpus.

**BACKGROUND**

Sorrell was charged with six counts: (1) residential burglary (2) assault with a deadly weapon, (3) grand theft, (4) witness intimidation, (5) severing a telephone line, and (6) brandishing a weapon. *See People v. Sorrell*, slip op., case no. A115291 (Cal. Ct. App. July 2, 2008) ("App. Op."), at 2, lodged as Resp't Ex. C. Of these charges, Sorrell was convicted on three counts: (1) assault with a deadly weapon, (2) witness intimidation, and (3) brandishing a weapon. *Id.* at 1. Sorrell was sentenced to a

term of three years for the assault with a deadly weapon conviction. *Id.* at 3. This sentence was doubled and then combined with an additional five-year enhancement for a serious felony prior conviction, for a total term of eleven years. *Id.*

Sorrell appealed his convictions for assault with a deadly weapon and witness intimidation. *Id.* at 1. His convictions were affirmed by the California Court of Appeal in July 2008, and his petition for review was denied by the California Supreme Court in September 2008. Petition at ¶¶ 3(b)–3(c). This action was then timely filed in December 2009.

The appellate court recited the following facts, based on evidence adduced at trial. "Sorrell and . . . Maria Vasquez (Vasquez) began dating in 2001 and became engaged in August 2004." App. Op. at 2; *see also Brown v. Horell*, --- F.3d ----, 2011 WL 2685580, *8 (9th Cir. 2011) ("We review the last reasoned state court opinion and presume that the state court's factual findings are correct." (internal quotation marks and citation omitted)). On October 18, 2004, in an earlier case with unrelated charges,

> Sorrell pleaded nolo contendre . . . to two counts of burglary and admitted a prior strike allegation and three prison priors in exchange for dismissal of related charges and allegations and a prison sentence of six years. His sentencing was set for January 7, 2005, but he failed to appear.

*Id.* at 1. This case involves Sorrell's interactions with Vasquez nearly two weeks later, on the night of October 29, 2004—just after Sorrell had entered his nolo plea in the previous case, and several months before he was due to be sentenced.

The appellate court described the incidents leading up to the evening of October 29 as follows:

> Vasquez became pregnant by Sorrell in the fall of 2004. She decided to have an abortion, despite his objections. Twice before she had been pregnant by Sorrell, and both times the pregnancies had been terminated by abortion.
>
> . . .
>
> Vaquez had an abortion on October 27, 2004. On October 28, 2004, she went out drinking at a San Francisco nightclub, without Sorrell. She consumed "a lot" of vodka and, by the time of trial, could not remember exactly how or when she returned to her apartment the next morning.
>
> Vasquez did recall that she awoke on the morning of October 29, 2004, when Sorrell knocked on her door. Sorrell asked where she had been the previous night, and Vasquez replied that she had been with friends. They argued about why she had been out all night, whom she was with, and why she went out after having an abortion. Sorrell was upset and unhappy about the abortion. He also pulled down her pants and said that was what a pimp would do with a "ho," evidently implying that Vasquez was having sex with other men. Sorrell bit her cheek and (either that morning or in the evening) struck

2

her with his fist, leaving a "knot" on her head. After Sorrell left the apartment, Vasquez telephoned Sorrell's mother and asked her to "put some sense into him."

*Id.* at 2–3.

Sorrell was convicted based on his conduct later that night:

> That evening, Vasquez experienced vaginal bleeding, telephoned Sorrell, and asked him to take her to the hospital. Sorrell agreed and went to her apartment. After he prepared food for himself, they began to argue about their relationship, particularly their infidelities. In addition, Sorrell lamented that he was returning to prison and that things had always gone badly for him. He then picked up a knife in the kitchen and put it to his throat. (The knife was a single-sided and serrated 8-3/4" kitchen knife.) Sorrell said he was going to kill himself. Vasquez was scared, not only about what Sorrell might do to himself, but also for her own life, because she was unsure whether Sorrell would harm her. She attempted to take the knife from him by reaching up and trying to grab his arm. Sorrell was six feet two inches tall while Vasquez was five feet two inches tall, and he held the knife out of her reach. Eventually, she got the knife and threw it under the stove. After Sorrell left, Vasquez called David Balague, the father of her son; Balague apparently called the police.
>
> Additional evidence indicated that, at some time during Vasquez's struggle with Sorrell over the knife, Sorrell also held the knife over Vasquez's head and threatened to kill her. In this regard, Vasquez's trial testimony was inconsistent. At one point, she testified that she did not remember if Sorrell said anything to the effect of wanting to harm her since he was going to jail. But she also testified that Sorrell stated, "[i]f he was going to jail, he's going to kill me." When asked at trial whether she told the police that Sorrell threatened to kill her, Vasquez replied that she did not want to answer the question and claimed not to remember.
>
> Pacifica Police Officer Steidle had a clearer recollection. Officer Steidle testified that he was dispatched to Vasquez's apartment on October 29, 2004, and arrived at 10:30 p.m. He noticed a bite mark on Vasquez's cheek, a bruise on her left arm, and a large knot on her forehead. By Vasquez's account, Sorrell said he was going to prison for six years, held a knife to his throat, and then held the knife point down over Vasquez's head and said something to the effect of, "[i]f I'm going to jail, I'm going to fuck you up, I'm going to kill you." Officer Steidle also recounted at trial Vasquez's preliminary hearing testimony, in which she claimed that Sorrell threatened to kill her if he was going to jail.
>
> On October 30, 2004, Officer Steidle spoke with Sorrell. Sorrell denied being at Vasquez's apartment the previous day and claimed it was Balague who beat her. Sorrell did not appear for his sentencing in the burglary case . . . on January 7, 2005. He was arrested on March 17, 2005.

*Id.* 3–4 (brackets original).

The appellate court also summarized the defense case.

> Sorrell conceded at trial that he had lied to Officer Steidle when he denied being at Vasquez's apartment on October 29 and blamed her beating on Balague. He recalled the events of that day as follows.
>
> On the morning of October 29, Sorrell visited Vasquez to check on her well-being, because he knew she was pregnant and had not been able to contact her the previous evening. When he arrived, Vasquez told him that she was tired, drunk and

3

> hungover. Sorrell asked when she was going to grow up and act like a mother-to-be; in response, Vasquez called him an asshole, slapped him, and informed him of the abortion. Sorrell grabbed Vasquez's arms to keep her from hitting him again, but she struggled and butted her head against his chest, hitting the flashlight he carried as part of his work uniform. Sorrell told her to calm down and, out of frustration, bit her cheek. He did not otherwise touch her. After stressing the importance of communication in a relationship, he hugged her and went to work. They spoke by telephone several times during the day and apologized to one another.
>
> After work, Sorrell testified, he took a cab to Vasquez's and arrived between 7:30 and 8:30 p.m. He fixed himself something to eat. He was still upset that she had not communicated with him about the abortion. In addition, he had received a telephone call earlier that day from his lawyer, and he felt "depressed, sad, emotional" knowing that he was going to spend six years in prison. To "express" his sadness, Sorrell grabbed a knife from the kitchen counter, held it up to his throat, and told Vasquez he felt like killing himself. Vasquez told him to give her the knife and pried it out of his hands. She then threw the knife under the stove and gave him a hug. Sorrell denied ever pointing the knife at Vasquez or threatening her.

*Id.* 4–5.

## LEGAL STANDARD

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim under the Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). If a prisoner can show there is insufficient evidence to support a conviction, the prisoner is entitled to federal habeas relief. *See id.* at 324; *see also, e.g., Wigglesworth*

4

Case 3:09-cv-05888-SI Document 17 Filed 08/09/11 Page 5 of 10

*v. Oregon*, 49 F.3d 578, 582 (9th Cir. 1995) (writ granted where Oregon procedure of allowing lab reports regarding drug analyses to be admitted into evidence without authenticating testimony relieved state of its burden to prove beyond reasonable doubt all elements of crime charged); *Martineau v. Angelone*, 25 F.3d 734, 739-43 (9th Cir. 1994) (writ granted where evidence found insufficient to convict defendants of child abuse based on delay in seeking medical care for child).

A federal court collaterally reviewing a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993). Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. *Jackson*, 443 U.S. at 324. After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. § 2254(d)).

Although sufficiency of the evidence review is grounded in the Fourteenth Amendment, a federal habeas court undertakes the inquiry with reference to the elements of the criminal offense as set forth by state law. *Juan H.*, 408 F.3d at 1275 (citing *Jackson*, 443 U.S. at 324 n.16). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see, e.g.*, *McDaniel v. Brown*, 130 S. Ct. 665, 673–74 (2010) (concluding the 9th Circuit erred by failing to review all of the evidence in light most favorable to the prosecution when it resolved inconsistencies in testimony in favor of petitioner).

A jury's credibility determinations are entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Uncontradicted testimony is not necessarily undisputed evidence. *United States v. Sandoval-Mendoza*, 472 F.3d 645, 649 (9th Cir. 2006). Jurors may reject uncontradicted

5

testimony when cross examination, other evidence, or their own common sense and ordinary experience convince them the testimony is probably false. *Id.* Even perfectly plausible allegations can be disbelieved if they occur during the course of a generally implausible account. *See id.* (the jury's conclusion that the defendant was not entrapped met the *Jackson* standard, even though he testified that he was entrapped and the informants who allegedly entrapped him did not testify at all).

In a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). However, "mere suspicion and speculation cannot be the basis for creation of logical inferences." *Id.*; *see also Juan H. v. Allen*, 408 F.3d 1262, 1278–79 (9th Cir. 2005) (granting writ where, after resolving all conflicting factual inferences in favor of prosecution, only speculation supported petitioner's conviction for first degree murder under a theory of aiding and abetting).

## DISCUSSION

Sorrell challenges the sufficiency of the evidence supporting both his convictions for assault with a deadly weapon and witness intimidation.[1]

---

[1] Respondent did not address the witness intimidation conviction in his answer to the Court's order to show case. In his traverse, Sorrell argues that respondent's failure to address the witness intimidation conviction in its return constituted a de facto concession of Sorrell's claim that there is insufficient evidence to support the witness intimidation conviction. However, there is no right to default judgment in habeas corpus proceedings, and a Court may resolve habeas claims even without the State's response. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). At the hearing, respondent apologized for inadvertently failing to address the claim, and indicated that respondent does oppose Sorrell's claim. Additionally, while Sorrell must overturn both convictions in order to secure release, he is only being held on the assault conviction. Thus, the Court does not find that respondent conceded with regard to the witness intimidation claim.

At the hearing, the Court gave both parties the opportunity to file supplemental briefing regarding the witness intimidation charge. Petitioner objects that permitting the parties to file supplemental briefing is "inconsistent with practice under the habeas Rules." Pet'r Suppl. Traverse at 4 n.3. However, the local Habeas Rules explicitly state that the briefing schedule and procedure set forth is "subject to modification by the assigned Judge." Habeas L.R. 2254-6; *cf.* Habeas L.R. 2254-7(b) (specifically permitting the Court to request further briefing after evidentiary hearings). *See also Fenza's Auto, Inc. v. Montagnaro's, Inc.*, Civil No. 10–3336 (RBK/JS), 2011 WL 1098993, *4 (D.N.J. March 21, 2011) (explaining that courts have "broad discretion to consider supplemental briefing as appropriate and fair"); *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655 (D. Kan.

In California, a conviction for assault with a deadly weapon requires a willful act to use a deadly weapon in such a manner that the natural and probable consequence would be to injure another. *See* Cal. Penal Code § 245; *People v. Colantuono*, 7 Cal. 4th 206, 214-215 (1994). Assault with a deadly weapon may be either simple or conditional. In a simple assault with a deadly weapon, all appearances must suggest that a battery will imminently follow the assault. *People v. Page*, 123 Cal. App. 4th 1466, 1473. In a conditional assault, the threat of battery must relate to immediate, rather than future, conditions or demands. *Id.* (Sorrell concedes that, should the Court find an assault took place, his use of a knife qualifies as a deadly weapon.)

California also criminalizes attempting "to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from . . . [m]aking any [official] report of that victimization." Cal. Penal Code § 136.1(b)(1). The crime is a felony where it is "accompanied by force or by an express or implied threat of force or violence, upon a witness or victim." *Id.* § 136.1(c)(1); *see also* App. Op. at 11 ("Penal Code section 136.1, subdivision (b)(1), provides criminal liability for anyone who uses force or the threat of force to prevent or dissuade a witness or victim from reporting a crime to law enforcement.").[2] A witness intimidation conviction does not require that the accused specifically tell the victim or witness not to speak. *People v. Mendoza*, 59 Cal. App. 4th 1333, 1344 (1997) (superceded by statute on other grounds). Rather, the words or actions of the accused must support an inference that he was using force and threat of force to convince an individual not to call the police. *Id.*

Both of Sorrell's convictions are for one specific act on the night of October 29, 2004, when Sorrell stood with a knife pointed down at Vasquez and said "[i]f I'm going to jail, I'm going to fuck you

---

1999) (explaining that courts have "discretion to permit additional briefs or memoranda" to supplement those explicitly permitted by local rules).

[2] The state court also instructed the jury that it could only convict if it found that when Sorrell made his threat, "he intended to cause Maria Vasquez *to withhold true material information about a crime* from a law enforcement official." TR 701:13–701:16, lodged as Resp't Ex. B, vol. 5 (emphasis added).

7

1 up, I'm going to kill you."[3] As the California Court of Appeal correctly pointed out, there is only one
2 meaning that could be attributed to Sorrell's statement that would allow his actions to support
3 convictions for both assault and witness intimidation:  he meant "I'm going to kill you if you call the
4 police on me right now." *See* App. Op. at 13 n.5.[4]  "[H]e was using force and the threat of force to
5 convince her not to call the police." *Id.* at 12.

Sorrell argues that his use of the phrase "if I'm going to jail" means that he was not going to harm Vasquez until such time as he was actually on his way to jail, and therefore the threat of battery was not imminent. The state court disagreed, explaining that the rational jury could have found that the phrase "if I'm going to jail" could mean if you do something right now (call the police to report a crime) that could cause me to go to jail later (for the crime that you are about to report), then I will batter you right now.

Sorrell argues that this is an irrational interpretation of his wording and is contrary to the evidence in the case, because it is not literally what he said, and because both Vasquez and Officer Steidle testified that they understood Sorrell's words to be referring to the impending jail sentence for his burglary conviction. As the California Court of Appeal correctly pointed out, the jury was not required to agree with Vasquez and Officer Steidle, as long as there was evidence that would support the alternate explanation. And it is not irrational for a jury to interpret "if I'm going to jail" in this manner.

Sorrell also argues that there was no such evidence because, at the moment in time that he held the knife, Vasquez did not actually have any "true material information" to report as the victim of or

---

[3] The State of California argued for conviction at closing based on this conduct. TR 653:26–654:6, lodged as Resp't Ex. B, vol. 4. At the sentencing hearing, the State conceded that the witness intimidation was "the same transaction" as the assault with a deadly weapon. TR 17:29–17:25, lodges as Resp't Ex. B, Reporter's Transcript, August 11, 2006. The trial court found this to be the case and on that basis sentenced Sorrell only on the assault conviction pursuant to a California double jeopardy provision. *See id.* at TR 18:18–18:21; Cal. Penal Code § 654.

[4] The appellate court provided an alternative interpretation of the statement that did not view Sorrell's threat to Vasquez as being conditional, but rather a statement of s*ince* I'm going to jail, I'm going to fuck you up. *Id.* at 14. Sorrell makes a variety of arguments against this interpretation. Because the appellate court also provided the conditional threat explanation, which is consistent with both convictions and is supported by the evidence, the Court does not reach these arguments.

**United States District Court**
For the Northern District of California

8

witness to a crime.[5] Inasmuch as suicide and attempted suicide are not crimes in the state of California, Sorrell could not be convicted of dissuading her from reporting a suicide attempt. *See In re Joseph G.*, 34 Cal. 3d 429 (1983); 17 Cal. Jur. 3d Criminal Law: Crimes Against Admin. of Justice § 495. Additionally, there is no indication in the witness intimidation statute or in California case law, and respondent does not argue, that a person can be guilty where he threatens a person *before* that person becomes a witness or victim. Thus, if the assault and the witness intimidation consisted of the same brief act, and they did, then Sorrell could not have been convicted for attempting to dissuade Vasquez from calling the police about the assault, since the assault had not yet occurred.[6]

However, the appellate court correctly concluded that there was sufficient evidence to support a finding that Sorrell did not want Vasquez to call the police regarding the events on the day in question, which Vasquez had witnessed and been the victim of, because he feared that it would lead to additional jail time for him. The appellate court's reasoning as to *which* activity on the day in question would warrant calling the police was somewhat vague. The court did, however, explain that "while Vasquez had not reported Sorrell to the police after their argument in the morning, it was nonetheless reasonable for the jury to believe that Sorrell was concerned she might call the police based on his conduct that evening." App. Op. at 12.[7]

---

[5] Sorrell also attempts to analogize his case to *People v. Page*, 123 Cal. App. 4th 1466 (2004), where a California court explained that using a deadly weapon to threaten harm if a robbery victim were to involve the police in the future does not threaten sufficiently imminent harm, and therefore would not constitute assault with a deadly weapon. *Id.* at 1473; *see also id.* at 1468–69 (explaining that the threat occurred after an outdoor mugging at 3:30 in the morning; and that the woman who held the weapon to the victim's neck told him not to involve the police, and that if he did, she knew where he lived.). Here, however, the appellate court explained that the threat was to prevent Vasquez from calling the police then and there—not, as Sorrell contends, to prevent her from summoning police later in the evening. *See* App. Op. at 13 n.5 ("[T]he jury could have found that Sorrell meant . . . I'm going to kill you if you call the police on me right now.").

[6] Thus, the California Court of Appeal was mistaken to the extent that it relied on evidence that showed that Sorrell "could have meant that, if he was going to jail for what he was doing *or about to do* in her apartment on October 29, he was going to kill her," or that "Sorrell was perpetrating an assault by conditional threat . . . to kill her if she called the police then and there for what he was doing." *See* App. Op. at 9. However, as discussed below, the Court of Appeal did not rest on this reasoning alone, and so its opinion does not reflect an unreasonable application of *Jackson* to the facts of the case.

[7] Sorrell also argues that witness intimidation is a specific intent crime, and there is no evidence from which the jury could have found specific intent. However, assuming the jury interpreted Sorrell's threat in this way, it could have found specific intent based on Sorrell's words.

9

It was not unreasonable for the state court to find that there was sufficient evidence in the record to support a finding that Sorrell feared that Vasquez would call the police to file domestic violence charges. Sorrell bit Vasquez and struck her with his fist. Even if both of these acts occurred in the morning, and even though Vasquez had not yet reported Sorrell's violent acts, there was evidence that Sorrell and Vasquez had been arguing that evening, and Sorrell may well have concluded that their renewed fighting would lead Vasquez to file charges that night. That may well have caused him to hold the knife over Vasquez's head and say what he said—to use the threat of force to convince her not to report to the police true material information about domestic violence crimes that she had both witnessed and been the victim of.[8]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Sorrell's petition for writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: August 9, 2011

SUSAN ILLSTON
United States District Judge

---

[8] Additionally, Vasquez testified that she "picked up the phone" at some point during the evening, either to get Sorrell to leave or because she actually "had intentions to call" 911. TR 135:24–136:2, lodged as Resp't Ex. B, vol. 2. The state appellate court did not reference this evidence, and the Court does not rely on its existence in denying Sorrell's habeas petition. However, Vasquez's testimony does underscore the Court's conclusion that more than "mere suspicion and speculation" supports a logical conclusion that Sorrell threatened Vasquez in order to prevent her from calling 911 right then. *See Walters*, 45 F.3d at 1358.